IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON DIVISION

| | | |
|---|---|---|
| Auto-Owners Insurance Company, | ) | C.A. No. 8:07-3233-HMH |
| | ) | |
| Plaintiff, | ) | |
| | ) | **OPINION AND ORDER** |
| vs. | ) | |
| | ) | |
| Amanda L. Collins, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on cross-motions for summary judgment. For the reasons stated below, the court grants Auto-Owners Insurance Company's ("Auto-Owners") motion for summary judgment and denies Amanda L. Collins' ("Collins") motion for summary judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This is a declaratory judgment action in which Auto-Owners' seeks a declaration that Collins is not entitled to uninsured motorists ("UM") benefits under the Policy at issue. Collins counterclaimed for a declaration that she qualifies for UM coverage under the Policy.

**A. The June 27, 2004, Accident**

On June 27, 2004, Collins was injured in a single-vehicle accident on Highway 90 near Westminster, South Carolina ("June 2004 accident"). (Pl.'s Mem. Supp. Summ. J. Ex. M (Police Report).) She was a front-seat passenger in an uninsured vehicle driven by Timothy J. Nabors ("Nabors"). (Id. Ex. M (Police Report).) Collins' boyfriend at the time, Allen Bleckley, Jr. ("Bleckley"), was in the back seat. (Id. Ex. M (Police Report).) Collins was seriously injured in the accident. (Compl. ¶ 6.) The police report indicates that Collins' address was

1

10869 Longcreek Highway, Westminster, South Carolina ("Longcreek address"), the address at the time of Collins' best friend, Amy Swafford ("Swafford"). (Def.'s Mem. Supp. Summ. J. Ex. M (Police Report) & Dep. Exs. (Collins Dep. at 35).)

Subsequently, Nabors was charged with driving under the influence of alcohol. (Id. Ex. M (Police Report).) Although Collins denied that she was consuming alcohol on the night of the June 2004 accident in her examination under oath ("EUO"), she admitted during her deposition that she had been drinking alcohol that night. (Id. Dep. Exs. (Collins EUO at 33 & Collins Dep. at 66-67).) Collins was treated for her injuries at Oconee Memorial Hospital. The hospital listed Collins' address as the Longcreek address. (Id. Dep. Exs. (Collins Dep. at 50-51).)

On July 3, 2004, Collins was involved in another automobile accident ("July 2004 accident"). (Id. Dep. Exs. (Collins Dep. at 16).) The vehicle in which she was a passenger was struck in the rear by another vehicle driven by Jimmy Swafford, Amy Swafford's husband. (Pl.'s Mem. Supp. Summ. J. Dep. Exs. (Collins Dep. at 39) & (Nabors Dep. at 22).) Collins aggravated her injuries in the July 2004 accident. (Id. Dep. Exs. (Collins Dep. at 39).)

**B. The Policy**

Auto-Owners issued a personal automobile insurance policy to Nancy Collins ("N. Collins"), Collins' mother, Policy Number 42-503-962-00 with a policy term of April 4, 2004, to October 8, 2004. (Compl. Ex. A (Policy).) The Policy Declarations list two covered automobiles, a 1996 Chevrolet Blazer and a 1992 Oldsmobile Ninety-Eight. N. Collins is the only named insured on the Policy with a home address of 615 Ivon Lane, Walhalla, South Carolina ("Ivon address"). (Id. Ex. A (Policy).) The Policy provided coverage limits of $100,000 per person and $300,000 per accident. (Id. Ex. A (Policy).)

Collins filed a claim for uninsured motorist benefits under the Policy. The Policy contains a South Carolina Uninsured Motorist Coverage endorsement ("the UM Endorsement"). The UM Endorsement provides as follows:

> 2. **COVERAGE**
>    a. **We** will pay damages any person is legally entitled to recover from the owner or operator of an **uninsured automobile** for:
>       (1) **bodily injury** sustained when occupying or getting into or out of an **automobile** which is covered by **SECTION II – LIABILITY COVERAGE** of this policy; and
>       (2) **property damage** to **your automobile** and to property of **yours** or a **relative**.
>    b. If the first named insured in the Declarations is an individual, this coverage is extended as follows:
>       (1) **We** will pay compensatory damages **you** are legally entitled to recover from the owner or operator of any **uninsured automobile** for **bodily injury you** sustain:
>          (a) when **you** are a **pedestrian**; or
>          (b) when **occupying** an automobile **you** do not own which is not covered by **SECTION II – LIABILITY COVERAGE** of the policy.
>       (2) The coverage extended in (1) above is also afforded to a **relative** who does not own an **automobile**.
>    c. The **bodily injury** and **property damage** must be accidental and arise out of the ownership, maintenance or use of the uninsured **automobile**.
>    d. Whether an injured person is legally entitled to recover damages and the amount of damages shall be determined by agreement between the injured person and **us**. **We** will not be bound by any judgments for damages obtained or settlements made without **our** written consent.

(Id. Ex. A (Policy).) The relevant definitions at issue under the Policy are:

> 9. **Relative** means a person who resides with you and who is related to you by blood, marriage or adoption. Relative includes a ward or foster child who resides with you.
>
>    * * * *

3

>12.   **You** or **your** means the first named insured shown in the Declarations and if an individual, your spouse who resides in the same household.

(Id. Ex. A (Policy).)

Therefore, in order to qualify for UM benefits under the Policy, Collins must have been residing with her mother, N. Collins, at the time of the June 2004 accident.

**C. Collins' Residence**

Collins resided with her mother, N. Collins, and father, Gerald Collins, in a mobile home at the Ivon address until her graduation from high school in May 2000. (Pl.'s Mem. Supp. Summ. J. EUO Exs. (Collins EUO at 9).) In May 2000, Collins moved out of the mobile home where she lived with her parents and moved into a one-bedroom apartment attached to a warehouse ("warehouse apartment") located on the same property as the mobile home. (Id. EUO Exs. (Collins EUO at 9).) The property is approximately four acres. (Def.'s Mem. Supp. Summ. J. Ex. C (N. Collins EUO at 11).) The warehouse apartment consists of a living room, kitchen, bathroom, and bedroom. (Pl.'s Mem. Supp. Summ. J. Dep. Exs. (Collins Dep. at 6).)

The warehouse apartment was built prior to the purchase of the mobile home. (Id. Dep. Exs. (Collins Dep. at 17).) Gerald Collins lived in the warehouse apartment until the mobile home was placed on the property. (Id. Dep. Exs. (Collins Dep. at 17).) In 1996, after the mobile home was added, the family moved from Florida into the mobile home. (Def.'s Mem. Supp. Summ. J. Ex. C (N. Collins EUO at 11).) The warehouse apartment and mobile home share the same address, the Ivon address, and mailbox. (Id. Ex. D (N. Collins Dep. at 19) & Ex. E (Collins Dep. at 16.) The warehouse apartment and mobile home share electrical, water, and sewer utilities and are taxed as a single property. (Id. Ex. D (N. Collins Dep. at 12, 16).)

N. Collins pays the utilities on the property. (Id. Ex. D (N. Collins Dep. at 12, 16).) The warehouse apartment has had separate satellite service in the past that was paid for by N. Collins' son, Jerrod Collins. (Id. Ex. D (N. Collins Dep. at 12, 173).) Although the warehouse apartment and mobile home have had separate telephone service in the past, currently the telephone service is combined. (Pl.'s Mem. Supp. Summ. J. Dep. Exs. (N. Collins Dep. at 13-14) & EUO Exs. (Collins EUO at 29).)

Collins currently lives in the warehouse apartment with her boyfriend and son. Since May 2000, Collins has never resided in the mobile home. In her EUO, Collins testified that she was living in the warehouse apartment in 2004 and paid rent to her mother in the amount of $300 per month. (Id. EUO Exs. (Collins EUO at 11).) In addition, N. Collins stated in her EUO that Collins was supposed to pay rent on the warehouse apartment to her. (Id. EUO Exs. (N. Collins EUO at 28).) However, Collins testified that she had not paid any rent since the June accident. (Id. EUO Exs. (Collins EUO at 11).)[1] She further testified that she stayed occasionally with her mother in the mobile home. (Id. EUO Exs. (Collins EUO at 49).)

In March 2004, Gerald Collins moved into the warehouse apartment following surgery to partially amputate one leg because it was easier for him to navigate the entrance to the warehouse apartment as opposed to the mobile home. (Def.'s Mem. Supp. Summ. J. Ex. E (Collins Dep. at 28-29).) Collins testified that a hospital bed was placed in the living room for

---

[1]Collins stated in her deposition that her mother did not request that she pay rent. However, this testimony is not credible in light of Collins' and N. Collins' testimony during the EUO that Collins paid rent on the warehouse apartment until the June accident. In addition, Justen Whitesel ("Whitesel"), Collins' ex-husband, testified that they paid $300 rent per month when he lived with Collins in the warehouse apartment. (Pl.'s Mem. Supp. Summ. J. Dep. Exs. (Whitesel Dep. at 9).)

her father and that she provided care for him including preparing his meals and providing other assistance. (Id. Ex. E (Collins Dep. at 29).) N. Collins resided in the mobile home during this time. (Id. Ex. C (N. Collins Dep. at 34).) Gerald Collins remained in the warehouse apartment until his death on June 29, 2004. (Id. Ex. C (N. Collins Dep. at 32).) During the time that her father was living in the warehouse apartment, Collins stated that she spent approximately one night per week away from the apartment. (Id. Ex. E (Collins Dep. at 29-30).)

In contrast, Bleckley, her boyfriend at the time of the June accident, testified that Collins lived with him for one and one-half months before the June accident. (Pl.'s Mem. Supp. Summ. J. Dep. Exs. (Bleckley Dep. at 8).) Bleckley stated that they ceased living together because his injuries from the accident required him to move in with his mother. (Id. Dep. Exs. (Bleckley Dep. at 16).) There is also evidence that Collins spent several other nights away from the warehouse apartment during the relevant time period. (Id. Dep. Exs. (Collins Dep. at 49).)

On December 19, 2008, the parties filed cross-motions for summary judgment. The parties responded to the motions on January 6, 2009. The motions for summary judgment are now ripe for decision.

## II. DISCUSSION OF THE LAW

### A. Summary Judgment Standard

Summary judgment is appropriate only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

Rule 56(c) mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in the non-movant's favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

Moreover, "[w]hen a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must–by affidavits or as otherwise provided in this rule–set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). With respect to this burden, "it is the responsibility of the plaintiff, not the court, to identify with particularity the evidentiary facts existing in the record which can oppose the defendant's summary judgment motion." Malina v. Baltimore Gas & Elec. Co., 18 F. Supp. 2d 596, 604 (D. Md. 1998).

### B. Auto-Owners' Motion for Summary Judgment

Auto-Owners moves for summary judgment on its claim for a declaration that UM coverage under the Policy is unavailable to Collins because she is not a resident relative of N. Collins.

The purpose of the UM statute is "to provide benefits and protection against the peril of injury or death by an uninsured motorist to an insured motorist, his family, and the permissive

users of his vehicle." Ferguson v. State Farm Mut. Auto. Ins. Co., 198 S.E.2d 522, 524 (S.C. 1973). The statute "is remedial in nature, enacted for the benefit of injured persons and is to be liberally construed so that the purpose intended may be accomplished." Gunnels v. Am. Liberty Ins. Co., 161 S.E.2d 822, 824 (S.C. 1968) (internal quotation marks omitted).

It is undisputed that Collins was injured in the June 2004 accident where she was a passenger in an uninsured automobile and that she is not a named insured under the Policy. Therefore, for purposes of determining whether Collins is entitled to UM benefits under the Policy, the court must consider whether Collins "resides with" N. Collins. (Comp. Ex. A (Policy).) "Resides" is not defined in the Policy. "Insurance policies are subject to general rules of contract construction." State Farm Mut. Auto Ins. Co. v. Calcutt, 530 S.E.2d 896, 897 (S.C. Ct. App. 2000). Courts must "give policy language its plain, ordinary and popular meaning." Id. "When the contract is unambiguous, clear, and explicit, it must be construed according to the terms used by the parties." Myers v. Nat'l Sales Ins. Co., 606 S.E.2d 486, 488 (S.C. Ct. App. 2004). "The judicial function of a court of law is to enforce an insurance contract as made by the parties, and not to rewrite or to distort, under the guise of judicial construction, contracts, the terms of which are plain and unambiguous." Stewart v. State Farm Mut. Auto Ins. Co., 533 S.E.2d 597, 601 (S.C. Ct. App. 2000). "Where language used in an insurance contract is ambiguous, or where it is capable of two reasonable interpretations, that construction which is most favorable to the insured will be adopted." Poston v. Nat. Fidelity Life Ins. Co., 399 S.E.2d 770, 772 (S.C. 1990) (internal quotation marks omitted).

Ultimately, when one claims UM benefits on the basis of being a resident relative of an insured, "[t]he determination of resident relative status is a question of fact." Coakley v. Horace

Mann Ins. Co., 609 S.E.2d 537, 541 (S.C. Ct. App. 2005).  Prior to 1996, South Carolina courts determined residency under the following standard, known as the Buddin standard: "one, other than a temporary or transient visitor, who lives together with others in the same house for a period of some duration, although he may not intend to remain there permanently."  However, in State Farm Fire & Casualty Co. v. Breazell, 478 S.E.2d 831 (S.C. 1996), the South Carolina Supreme Court adopted a "more stringent approach" for determining residency that was articulated by the Wisconsin Court of Appeals in A.G. by Waite v. Travelers Ins. Co., 331 N.W.2d 643 (Wis. Ct. App. 1983) ("Waite test").  Smith v. Auto-Owners Ins. Co., 660 S.E.2d 271, 273 (S.C. Ct. App. 2008).  "Under the Waite test enunciated in Breazell, a person resides in a household with another if he or she:

> 1) liv[es] under the same roof; 2) in a close, intimate, and informal relationship, and 3) where the intended duration of the relationship is likely to be substantial, where it is consistent with the informality of the relationship and from which it is reasonable to conclude that the parties would consider the relationship in contracting about such matters as insurance or in their conduct in reliance thereon.

Smith, 660 S.E.2d at 273 (quoting Breazell, 478 S.E.2d at 832).  "Waite requires residents to liv[e] under the same roof . . . in a close, intimate, and informal relationship that anticipates both a substantial length and some durability."  Smith, 660 S.E.2d at 273 (internal quotation marks omitted).

In Smith, the insured owned two houses in different counties.  Id.  The insured's son lived in the Spartanburg County house.  Id.  The insured stayed at the Spartanburg County house up to four nights per week.  Id. at 274.  The court found that the insured was a resident with his wife at the Laurens County house and was a transient visitor to the Spartanburg County house.  Id. at 273-74.  Thus, the insured was not a resident of the Spartanburg County house and the son

did not qualify for underinsured motorist coverage under the insured's policy as a resident relative. Collins argues that Smith is inapplicable to this case because the court only determined "whether the insured maintained two separate households, and not whether the insured's two homes constituted one household." (Def.'s Mem. Opp'n Pl.'s Mot. Summ. J. 9.)

Instead, Collins submits that Cook v. State Farm Automobile Insurance Co., is the applicable case because Cook determined whether a granddaughter who lived in a mobile home on the grandfather's property was a resident relative of the grandfather. 656 S.E.2d 784,785, 787-88 (S.C. Ct. App. 2008) (applying the Buddin standard and finding that granddaughter who lived with mother and father in mobile home on grandfather's property was not a resident relative of grandfather because grandfather lived in a separate house that was physically separated by a fence from the mobile home, bills and expenses were paid separately, the father paid rent to the grandfather, and the father did not consider the two homes as a single residence). The court disagrees.

The Waite test for determining residency was specifically adopted by the South Carolina Supreme Court and is the controlling law. See Breazell, 478 S.E.2d at 832 ("We adopt the test [for determining whether a person is a resident of the insured's household] as set forth in Waite . . . ."). Smith considered and properly applied the Waite test.

In contrast, the South Carolina Court of Appeals in Cook did not apply the Waite test and only considered the Buddin standard, which has been abrogated by the adoption of the Waite test by the South Carolina Supreme Court in Breazell. The court recognizes that other decisions from the Court of Appeals have determined the residency referencing only the Buddin standard. See Cook, 656 S.E.2d at 787; Richardson v. South Carolina Farm Bureau Mut. Ins.

10

Co., 519 S.E.2d 120, 122 (S.C. Ct. App. 1999) (finding that insured's child was a transient visitor in father's household); Auto-Owners Ins. Co. v. Langford, 500 S.E.2d 496, 498 (S.C. Ct. App. 1998) (applying Buddin test and finding that insured's granddaughter was a transient visitor). However, the most recent South Carolina Court of Appeals decision, Smith, which was decided on March 31, 2008, applies the Waite test.

Further, the South Carolina Supreme Court has not altered its decision in Breazell and therefore, the Waite test remains controlling. Moreover, the South Carolina Supreme Court has not been presented with the question of whether two physically separate dwellings can constitute the same household. Thus, the court finds that it must apply the Waite test in determining whether Collins was a resident relative of N. Collins.

With respect to the first Waite factor, while it is unclear where Collins actually resided at the time of the June 2004 accident, she did not reside "under the same roof" with her mother, N. Collins, in the mobile home. There is no evidence that Collins ever stayed in the mobile home for other than occasional overnight visits. (Pl.'s Mem. Supp. Summ. J. Dep. Exs. (Collins Dep. at 49).) According to Collins, at the time of the June 2004 accident, she resided in the warehouse apartment located behind the mobile home on the property owned by her parents. (Id. Exs. C, D, E & F (Photos of Property Showing Location).); (Def.'s Mem. Supp. Summ. J., generally.) Therefore, Collins has failed to satisfy the first Waite factor. Further, other evidence supports the conclusion that Collins was not a member of N. Collins' household. Although the warehouse apartment and mobile home were taxed as a single property, shared an address, mailbox, and utility services, the warehouse apartment is a physically separate building from the mobile home. (Def.'s Mem. Supp. Summ. J. Ex. D (N. Collins Dep. at 12, 16).); (Pl.'s

11

Mem. Supp. Summ. J. Exs. C, D, E & F (Photos of Property).) Moreover, prior to the June 2004 accident, Collins paid rent on the warehouse apartment in the amount of $300 per month to N. Collins. (Pl.'s Mem. Supp. Summ. J. EUO Exs. (Collins EUO at 11).) Collins keeps her possessions in the warehouse apartment. A fence separates the warehouse apartment and the mobile home. (Id. Ex. D (Photo of Fence).) Collins did not regularly share meals with N. Collins and did not have free access to N. Collins' vehicles. (Id. Dep. Exs. (Collins Dep. at 49) & (N. Collins Dep. at 40).) Collins' activities and access to the warehouse apartment were unrestricted by N. Collins and N. Collins did not keep track of her daughter's whereabouts. (Id. Dep. Exs. (N. Collins Dep. at 30-31).) N. Collins did not move into the warehouse apartment when Gerald Collins was living there during his illness. (Def.'s Mem. Supp. Summ. J. Ex. C (N. Collins Dep at 34).) Based on these facts, N. Collins and Collins lived independent lives.

Also, N. Collins insured the mobile home but did not insure the warehouse apartment. (Pl.'s Mem. Supp. Summ. J. Dep. Exs. (N. Collins' Dep. at 19).) On her initial application for insurance in October 2000, N. Collins did not list Collins as a resident of her household. (Id. Ex. B (Policy Application).) These facts further substantiate the court's conclusion that Collins did not reside with N. Collins.

In addition, Collins fails to satisfy the third Waite factor,[2] because the undisputed facts indicate that N. Collins' relationship with Collins was such that she never intended to insure Collins under the Policy at the time of the June 2004 accident. As set forth above, N. Collins did not list Collins as a resident of her household and she only insured the mobile home, not the

---

[2]The court believes that genuine issues of material fact exist as to whether Collins satisfies the second factor. Therefore, the court declines to address this factor.

warehouse apartment. (Pl.'s Mem. Supp. Summ. J. Dep. Exs. (N. Collins Dep. at 19) & Ex. B (Policy Application).) Further, N. Collins added a vehicle owned by Collins to the Policy in 2001, but deleted coverage on the vehicle over two years prior to the June 2004 accident. (Id. Dep. Exs. (H.W. Parker, Jr. ("Parker") Dep. at 14) & (N. Collins EUO at 43).) The fact that N. Collins deleted coverage for Collins' vehicle, evidences N. Collins' intent to not insure Collins.

Moreover, during her marriage to Whitsel in 2002, Collins moved to Seneca for a few months. N. Collins' insurance agent, Parker, testified that Collins and Whitsel met with Parker regarding obtaining automobile insurance on Collins' vehicle and renter's insurance. (Id. Dep. Exs. (Parker Dep. at 9).) Based on the foregoing, there is abundant evidence that Collins did not rely on N. Collins to provide insurance for her. Therefore, Collins fails to satisfy the third Waite factor.

In sum, after a careful review of the record, the court finds that when viewing the evidence in the light most favorable to Collins, the warehouse apartment and the mobile home do not constitute the same residence. Therefore, Collins did not reside with N. Collins at the time of the June 2004 accident. As such, Auto-Owners' motion for summary judgment is granted.

### C. Collins' Motion for Summary Judgment

Collins moves for summary judgment seeking a declaration that she is entitled to UM coverage under the policy as a resident relative of N. Collins' household based on her living in the warehouse apartment. Issues of fact exist concerning where Collins lived. As set forth above, even assuming Collins lived in the warehouse apartment at the time of the June 2004

accident, Auto-Owners is entitled to summary judgment on its claim that Collins was not a resident relative of the insured under the Policy at the time of the June 2004 accident. Therefore, Collins' motion for summary judgment is denied.

It is therefore

**ORDERED** that Auto-Owners' motion for summary judgment, document number 38, is granted. It is further

**ORDERED** that Collins' motion for summary judgment, document number 43, is denied.

**IT IS SO ORDERED.**

s/Henry M. Herlong, Jr.<br>United States District Judge

Greenville, South Carolina
January 22, 2009